Henry Salvatori v. Commissioner.
Salvatori v. Commissioner
Docket Nos. 110426, 616.
United States Tax Court
1943 Tax Ct. Memo LEXIS 180; 2 T.C.M. (CCH) 518; T.C.M. (RIA) 43359; July 27, 1943
*180 Dana Latham, Esq., and Austin H. Peck, Esq., for the petitioner. B. H. Neblett. Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in the petitioner's income tax of $15,117.07, $5,930.70 and $3,740.51 for the years 1939, 1940 and 1941, respectively. The only issue presented is the correctness of the respondent's action in determining that the dividends on certain stock were taxable to petitioner, the said stock, according to petitioner, having been held not as his own but by him as trustee. Findings of Fact The petitioner is a resident of Los Angeles, California, and filed his income tax return for 1939, 1940 and 1941 with the Collector of Internal Revenue in that city. On November 22, 1937, the petitioner married Grace Ford. They have one child, a son born on June 28, 1940. At the first of 1939 the petitioner and his wife entered into an agreement whereby he pays her one-half of his salary and she pays her own personal expenses and one-half of the household expenses and the petitioner pays his personal expenses and the other one-half of the household expenses. Under this arrangement the net worth of the *181 wife increased from $228 on January 1, 1939, to $107,673 on January 1, 1943. The wife has her own bank account, on which the petitioner is not authorized to draw checks. In 1939 the petitioner was the owner of 49 of the 100 outstanding shares of stock in Western Geophysical Company of California, a Delaware corporation, and the remaining 51 shares were owned by Stanolind Oil and Gas Company, of Tulsa, Oklahoma. The petitioner has been president and the guiding head of Western Geophysical Company of California, sometimes hereinafter referred to as Western, since its formation in 1933. About 1933 or 1934 the petitioner formed two trusts, of which he was both donor and trustee. The corpus of each trust consisted of a few thousand dollars, which was deposited with a branch of a bank in Los Angeles. Both trusts were active during 1939, but have since been terminated or became inactive. The beneficiaries of these trusts were Frank Salvatori, Albert H. Salvatori and Anna Bresciani, who were father, brother and sister, respectively, of the petitioner. Frank Salvatori is a native and resident of Italy and during 1939 was in comfortable financial circumstances. In 1939 Albert H. Salvatori *182 was about 25 years old, living in Los Angeles, in good health, and employed. During 1939 Anna Bresciani was in good health and was living in New Jersey with her husband, who was in moderate financial circumstances. In the early part of 1939, the petitioner began discussions with counsel about the formation of a trust with respect to some of the stock owned by him in Western. On November 6, 1939, petitioner executed an instrument prepared by his counsel and entitled "Indenture of Trust". On November 9, 1939, the instrument was filed for record with the County Recorder's Office, Los Angeles County, California. In the said instrument the petitioner was designated grantor and first party, also second party and trustee for Grace Ford Salvatori Patsy Ford, Frank Salvatori, Albert H. Salvatori and Anna Bresciani. The instrument recited the transfer of $3,000 in trust by the first party to the second party, and contained the following provisions: II. IRREVOCABILITY, ETC. This trust is and shall be irrevocable. Said first party shall have no right or power to alter, amend, modify, or otherwise change any of the provisions of this trust, or revest in himself title to any part of the trust *183 corpus, and shall have only such rights with respect to this trust and the assets thereof as are herein specifically granted him. Said first party hereby finally, completely, and forever renounces all interest in or to any of the corpus or income of this trust, present or future, and under no circumstances shall any of the income be held or accumulated for future distribution to, nor shall the income or principal or any part thereof be paid or distributed or be available to first party during the continuance or upon the termination of this trust, or otherwise. No part of the income or principal of this trust shall be used to discharge any obligations of said first party, including the obligation of said first party to support his wife, children, parent or parents, or any other person, nor shall any part of the income or principal be applied for the payment of premiums upon policies of insurance on the life of said first party. III. DISTRIBUTIONS OF INCOME During the continuance of this trust, the trustee shall collect the gross income thereof and shall pay all the necessary expenses of, and other items properly chargeable against said trust. The difference between said gross *184 income and said expenses and other charges shall be the "income" of this trust. The income of this trust shall be distributed by the trustee at such times and in such amounts to all or any one or more of the beneficiaries of this trust as the trustee in his uncontrolled discretion may determine. There shall be no obligation whatsoever upon the trustee to distribute all or any part of the income of this trust among said five beneficiaries, or the survivors, equally or otherwise. Likewise, the trustee in his uncontrolled discretion may accmulate all or any part of the income of this trust for future distribution as income among the beneficiaries hereof. It is the purpose and intent of this indenture of trust that the trustee hereof shall have absolute and uncontrolled discretion as to the accumulation of the income of this trust and of the distribution of said income at such times and in such amounts and to such beneficiary or beneficiaries as he shall determine. Accumulated and undistributed income shall be distributed upon termination of this trust as provided in Paragraph V. IV. DISTRIBUTIONS OF PRINCIPAL The trustee may at his sole discretion at any time and as often as he desires *185 make distributions of principal in any amount, including the whole thereof, to all or any one or more of the beneficiaries in the same manner that he may distribute income as provided in Paragraph III. The entire principal shall be distributed upon termination of the trust as provided in Paragraph V. V. TERMINATION This trust shall terminate (a) In any event upon the death of any four of the five above-named beneficiaries. Upon termination on account of such event, all of the accrued, accumulated, and undistributed income and the remaining principal of the trust shall be immediately paid and distributed to the surviving beneficiary. (b) In any event upon the death of the said first party. Upon termination on account of such event, all of the accrued, accumulated, and undistributed income and the remaining principal of the trust shall be immediately paid and distributed as follows: (1) If Grace Ford Salvatori be then living, and the lawful wife of said first party, to said Grace Ford Salvatori. (2) If Grace Ford Salvatori is not then living, or is not the lawful wife of said first party, to the then living child or children of said first party and the issue of any deceased *186 child per stirpes, share and share alike. (3) If no child or children of said first party or the issue of any deceased child is then living, to Albert H. Salvatori, if then living. (4) If the said Albert H. Salvatori is not then living, to Mrs. Anna Bresciani, if then living. (5) If the said Mrs. Anna Bresciani is not then living, to Frank Salvatori, if then living. (6) If the said Frank Salvatori is not then living, to the heirs of said Frank Salvatori. * * * * *
(c) At any time upon the distribution by the trustee of all the income and principal as provided in Paragraphs III and IV. * * * * *
VII. THE TRUSTEE Powers of. The trustee hereof shall have full power to manage and control the present and future assets of this trust and may at his sole discretion sell or dispose of, for any consideration which he deems advisable, any and all of the trust assets. Said trustee shall have the right to invest and reinvest the income of the trust and the proceeds from any sale or sales of trust assets, present or future, in any manner which he deems proper, and may purchase for the trust, on an installment basis or upon any other terms he may deem advisable, any form of *187 property, including common stock and bonds of private corporations, whether foreign or local. The trustee shall have the right to loan any trust assets, whether cash or other property, to any person with or without security, and upon such terms and conditions as he may deem proper. The trustee may sell or purchase property for the trust or loan any trust asset, as above specified, to or from himself individually. Said trustee shall have the right to vote any stock or security belonging to the trust, and to give and execute a proxy covering such stock or security to any person whom he may deem proper. Powers on Termination. On termination of this trust, the trustee shall continue to have all the powers necessary to make the final distributions and transfers of principal and income as herein provided. In the event the trust is terminated by death of the first party as provided in subdivision (b) of Paragraph V. and said first party on his death was trustee hereof, the majority of the beneficiaries surviving him shall appoint a trustee to make final distribution as provided in that paragraph, and said trustee shall have all the powers necessary for that purpose. * * * * *
*188 Liability. In connection with the administration of the affairs of this trust, the trustee shall be liable only for his own willful misconduct. * * * * *
IX. SPENDTHRIFT PROVISIONS No interest of any beneficiary under this trust either in income or in principal shall be subject to pledge, assignment, sale or transfer in any manner, nor shall any beneficiary have power in any manner to anticipate, charge or encumber his interest, either in income or in principal, nor shall such interest of any beneficiary be liable or subject in any manner while in the possession of the trustee for the debts, contracts, liabilities, engagements, or torts of such beneficiary. The instrument also contained provisions respecting successor trustees and the transfer by petitioner of additional property to the trust. Patsy Ford is the sister of petitioner's wife, and was about 13 or 14 years of age in 1939. She lived with her parents at Colton, California, except for such of the time as she was away attending a boarding school for girls in Los Angeles. At the time the petitioner executed the instrument of November 6, 1939, he had not entered into any agreement to support or to include Patsy Ford, *189 his father, his brother or his sister as beneficiaries in the said instrument, nor had he discussed with them the matter of naming them as beneficiaries. After execution of the instrument he notified them of his action by sending each a copy of the instrument. One of the motives for taking the above action was that petitioner expected to procure thereby some reduction in his income tax liability. On November 8, 1939, the $3,000 referred to in the above instrument was deposited by petitioner in a Los Angeles bank, in a checking account styled "Henry Salvatori, Trustee for Grace Salvatori, et al.". Since that time all receipts have been deposited in that account and all disbursements have been made by checks drawn on it. Petitioner, as trustee, alone has had authority to draw checks on the account. On November 9, 1939, a set of accounts was opened in which all transactions under the said instrument have been recorded. Under date of November 10, 1939, the petitioner addressed a letter to himself, as trustee, reciting his ownership of 49 of the outstanding 100 shares of the capital stock of Western, stating that in his judgment the stock had a fair market value of not to exceed $4,000 *190 a share, offering to sell 30 of the said shares to the trust for $3,000 a share, or a total of $90,000, and stating that the difference between the said $90,000 and the $120,000 fair market value of the 30 shares was a gift which he was making to the beneficiaries of the trust. It was stated that upon acceptance of the offer delivery would be made of a certificate for 30 shares endorsed in blank. It was requested that, in view of a certain contract entered into by the petitioner and Stanolind Oil and Gas Company in 1937, the certificate not be tendered to Western for transfer of the stock on its books. It was stated that immediately upon receipt of any dividends on the said 30 shares petitioner would account therefor. The terms of payment for the 30 shares were: $2,000 upon acceptance of the offer, with an additional $5,000 on or before December 31, 1939; $15,000 on or before December 31, 1940; the balance of $70,000 (sic) to be made at the rate of $10,000 a year, payable on or before December 31 of each year beginning with 1941. The deferred payments were to bear no interest, but a discount was to be allowable in case of payments prior to the due date. In case of a sale of the stock *191 by the trustee prior to the completion of payment to the petitioner, the proceeds from the sale were to be paid to petitioner until payment in full of the $90,000 purchase price. On the same day the petitioner, as trustee, endorsed his acceptance on the letter. In executing the trust indenture, the petitioner expected the trust to pay for the stock out of its income. As the initial payment on the purchase price of the stock, a check for $2,000 dated November 9, 1939, and payable to petitioner, was drawn on the bank account in the name of the trust. The dividends on the stock continued to be paid to the petitioner, who in turn deposited them or caused them to be deposited in the bank account of the trust. So far as disclosed, the petitioner never endorsed the certificate for the 30 shares of stock nor does it appear that he ever had the stock transferred into his name as trustee on the books of Western, although advised by his attorney that such transfer should be made. Federal and state gift tax returns were filed by petitioner with respect to the setting up of the trust. In addition to the $3,000 furnished by petitioner and heretofore mentioned, the receipts by the trust from November *192 6, 1939, to the end of February 1941 were as follows: December 15, 1939 Dividend on 30 shares
of Western Stock
$31,500
April 5, 1940 Dividend on 30 shares of
Western Stock
15,000
February 4, 1941 Dividend on 30 shares
of Western Stock
7,500
$54,000
From the creation of the trust to the end of February 1941, distributions were made as follows: Dec.
1939
1940
Total
Patsy Ford
$1,000
$ 700
$1,700
Grace Ford Salvatori
5,000
5,000
Frank Salvatori
760
760
Albert H. Salvatori
700
1,200
1,900
$7,460
$1,900
$9,360
Additional payments made to petitioner on the stock to the end of February 1941 were $5,000 in December 1939, $15,000 in January 1940, and in February 1941, $17,840 plus a discount of $160, thus leaving a balance of $50,000 due on the $90,000 purchase price. The petitioner did not include in his individual Federal and state income tax returns for the years 1939, 1940 and 1941 any of the dividends on the 30 shares of Western stock but reported the amounts as trust income in Federal and state income tax returns filed by him as trustee. Certain disbursements for taxes were also made by the trust in connection with the said returns. *193 By February 1941 the petitioner was having a controversy with the tax authorities of the State of California about the amount of the gift tax with respect to the trust. They took the position that under the terms of the trust the income and principal were dstributable to Patsy Ford, who was not related to petitioner, under the California gift tax law. This resulted in a higher gift tax than if the income and principal were distributable to a relative of petitioner or to his wife. The petitioner was informed that the tax would be computed in accordance with the position taken by the state tax authorities, unless within the statutory period for collecting the gift tax petitioner resolved the question of distribution by an actual distribution of the corpus, in which event the tax would be computed as if it had been given outright on the date of the creation of the trust. The petitioner selected his wife as the sole distributee in preference to the other beneficiaries named in the trust indenture and under date of February 28, 1941, addressed a letter to her reading as follows: As trustee of a certain trust created by me in November 1939 and of which you are one of the beneficiaries, *194 I am authorized to distribute without consideration, all or any part of the corpus of said trust to any of the beneficiaries thereof. The corpus of said trust consists of 30 shares of the common stock of Western Geophysical Company of California heretofore sold to the trust on an installment basis on November 10, 1939. The installment payments provided for by said agreement of sale have heretofore been made by the trust and there is now due to the seller of said stock from the trust the sum of Fifty Thousand Dollars ($50,000.00). As trustee I propose to hand you, without consideration, said stock of Western Geophysical Company of California. I would, however, like you to assume and agree to pay the balance due under the agreement of sale, a copy of which is attached. If what I suggest herein is satisfactory, please indicate in the space provided therefor at the end of this letter and I will immediately deliver said stock to you. She endorsed her acceptance on the letter. The petitioner thereupon terminated the trust and distributed to her all of the assets except a small amount of cash which he continues to hold for the payment of any tax liability which might be proposed. Aside *195 from her endorsement of acceptance on the letter of February 28, 1941, the petitioner's wife gave him no note or other evidence of indebtedness. So far as disclosed, the petitioner's wife has never made any payment to petitioner with respect to the stock. The petitioner's primary reason for distributing the stock to his wife was to save California gift tax, and by making the distribution to her he was able to effect a reduction of more than $4,000 in the amount as originally proposed. In determining the deficiencies involved herein, the respondent determined that the income reported as trust income was taxable to petitioner and included in his net income for 1939, 1940 and 1941 the amounts of $31,500, $15,000 and $7,500, respectively, representing the dividends paid in these years on the 30 shares of Western Stock. In his individual income tax returns for 1939, 1940 and 1941, the petitioner reported a capital gain from the sale of the 30 shares of Western stock to the trust and paid the tax thereon. At no time has the respondent taken the position or advised petitioner that the gain should not have been reported in petitioner's returns or that the tax should not have been paid thereon. *196 Opinion The question is whether the dividends received in the years 1939, 1940 and 1941 on the 30 shares of Western stock were taxable to the petitioner. Assuming the existence of a good and valid trust, the dividends were taxable to him as his income, under section 166 of the Internal Revenue Code, if he had the power at any time to revest title to the stock in himself, and similarly they were taxable to him, under section 167 of the Code, if any part of the dividends was, or in his discretion or in the discretion of any person not having substantial adverse interest might be held or accumulated for future distribution to him. Furthermore, the income was taxable to him if the rights to and the powers over the stock and the income therefrom were such as would under the provisions of section 22 (a) make the income his income. Helvering v. Clifford, 309 U.S. 331. It is the claim of the respondent that the income here in question may be taxed to the petitioner under any one of the above sections. With respect to sections 166 and 167, it is the claim of the petitioner that by reason of the declaration in the writing of November 6, 1939, that the "trust *197 is and shall be irrevocable" and the absence from the said writing of any provision for the holding or accumulation of income for future distribution to the grantor, neither section is applicable and the income must be taxed to the trust. Once the execution of the said instrument and the acts of the petitioner incident thereto and connected therewith are accepted as the creation of an effective trust, the argument as to section 167 seems to be sound. With respect to the question of irrevocability, however, the rights and powers in and to the property reserved to the petitioner elsewhere in the instrument are sufficiently broad to give much force to the respondent's argument that the income from the property is taxable to the petitioner under section 166, supra. Percy M. Chandler, 41 B.T.A. 165; affd., 119 Fed. (2d) 623. On the facts of record, however, there is no occasion to go further than section 22 (a), supra, in order to find the answer to the question here. It is extremely doubtful whether a gift to trust or otherwise was effected under the writing of November 6, 1939, and very strong grounds for concluding that *198 the said instrument amounted to nothing more than the formal declaration of an intention to make a gift or gifts at some time in the future to one or more in a specified group. No one of the group was, during the petitioner's lifetime, entitled to receive any part of the income or the corpus except and unless the petitioner by subsequent act should thereafter give it to him. No one in the group was, under the said writing, the recipient of any vested right in or to the property or the income therefrom, and the petitioner at all times retained the power to defeat the contingent right that anyone might be said to have received. That the petitioner himself did not regard the execution of the said writing and the acts incident thereto as the disposition of the stock to the parties named is indicated by his testimony, "But I was not sure I was going to make the gifts at the time I formed the trust." In the light of such testimony and the above facts, it would not in our opinion be unreasonable to conclude that the property in question was and remained the property of the petitioner, and if so, the income therefrom was his income and taxable to him, even though he may have had outstanding *199 a promise that the income as and when earned was to go to someone else. Lucas v. Earl, 281 U.S. 111, and Helvering v. Horst, 311 U.S. 112. Aside from the above, however, the dividends on the Western stock were the income of petitioner under section 22 (a), supra, even though we conclude, as he contends, that an effective trust was created by the writing of November 6, 1939. Helvering v. Clifford, supra. The petitioner was both grantor and trustee and his powers as trustee were extremely broad. He could distribute or withhold all of the income and all of the corpus as he saw fit; he could prefer one beneficiary over all of the others, or divide any distribution among them as he wished; he could sell property to or buy property from the trust at his own price and on his own terms; similarly he could borrow any or all of the trust assets. While the corpus of the trust as originally constituted was $3,000 in cash, he immediately acquired for the trust and from himself 30 of his 49 shares of Western stock, paying $2,000 of the $3,000 as the first payment thereon. The petitioner's business *200 fortunes were definitely linked with those of Western, and ownership and control of the Western stock were of primary importance to him. For his own reasons, he did not desire that any transfer of Western stock be known and did not have the stock transferred on the books of the company from his individual name to himself, as trustee. In addition to the retained power to reacquire the stock whenever he saw fit and at his own terms, he could at all times vote the stock as his own. He could terminate the trust, and after approximately 2 1/3 years and did do so, without consulting with or considering the desires or wishes of any of the beneficiaries. All of the beneficiaries were closely related to him by blood or marriage, but upon termination of the trust his wife was the only one selected to benefit, and she, for the first time, became the holder of vested rights and interests in the property. One of the admitted reasons for the setting up of the trust was the benefit to be derived from a division, for tax purposes, of Western stock and the dividends thereon, and the sole reason given for its termination was the tax benefit which petitioner hoped to gain in a controversy with the State *201 of California. The petitioner's rights and powers in and to the property and the benefits available to him therefrom throughout the period during which the writing of November 6, 1939, was operative was such as to satisfy the normal concepts of ownership of the corpus and the income therefrom within the meaning of section 22 (a), supra. Helvering v. Clifford, supra.See and compare Frederick B. Rentschler, 1 T.C. 814 and Commissioner v. Buck, 120 Fed. (2d) 775. Decision will be entered under Rule 50.