Hiram C. Bloomingdale v. Commissioner.
Bloomingdale v. Commissioner
Docket No. 1971.
United States Tax Court
1944 Tax Ct. Memo LEXIS 60; 3 T.C.M. (CCH) 1150; T.C.M. (RIA) 44354; October 31, 1944
*60 Solomon I. Sklar, Esq., and Sydney C. Winton, Esq., 30 Broad St., New York, N. Y., for the petitioner. Conway Kitchen, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined deficiencies in income tax against petitioner for the years 1937 to 1940, inclusive, as follows: Year
Deficiency
1937
$138,133.16
1938
124,173.58
1939
135,026.69
1940
150,195.52 Some of the adjustments have been conceded by petitioner. Respondent also concedes that petitioner is entitled to certain deductions which were not claimed on the original returns. Petitioner claims that he is entitled to a refund for the years 1939 and 1940. The sole issue presented is whether petitioner is taxable upon the income of two separate trusts created by him for his two children. Petitioner filed his returns for the taxable years with the collector for the third district of New York. Most of the facts have been stipulated. Findings of Fact Petitioner, who resides in New York City, has two sons, Lyman G. Bloomingdale and Alfred S. Bloomingdale. Lyman was born on August 18, 1912, and became twenty-one years of age on August 18, 1933. He was married on *61 June 24, 1939. Alfred was born on April 15, 1916, and became twenty-one years of age on April 15, 1937. On April 18, 1932, petitioner executed two trust indentures under which he named himself and Wolfgang S. Schwabacher as trustees. The trusts were for the benefit of Lyman and Alfred and were identical in language and in form, differing only in the name of the respective beneficiary. Each trust is irrevocable and the grantor is without power at any time "to revoke, change, or annul any of the provisions". It is also provided that each trust is to be construed according to the laws of the State of New York, where the trusts were made and are to be enforced. The respective indentures provided that during the minority of each son, the trustees were, in their uncontrolled judgment and discretion, to pay to petitioner, or in the event of his death, to certain other individuals, so much of the net income as the trustees might deem necessary and proper for the support, maintenance and education of such son or to employ the same for his use and benefit in any other manner, and to accumulate the surplus net income, if any. When the respective son became 21 years of age, the trustees were *62 directed to pay over to him the accumulated net income and thereafter to distribute to him the entire net income until he reached the age of 30 years, at which time the trustees were directed to deliver to him one-quarter of the trust corpus. Thereafter, he was to receive the net income from the remaining corpus until he reached the age of 35 years, when the trustees were directed to distribute to him one-third of the corpus then remaining in their hands. After that time, he was to receive the net income from the remaining corpus until he reached the age of 40 years, at which time the trustees were to deliver to him one-half of the then remaining corpus. Thereafter, he was to receive the net income from the balance of the trust corpus during his lifetime. On the son's death, the trust was to terminate and the trustees were directed to pay the trust corpus and accumulated income to such persons as the son might appoint by will, and in event of the son's failure to make such a disposition, the trustees were required to deliver the trust corpus and accumulated income to the son's issue, per stirpes. In the event that the son died without issue, leaving his brother surviving, the *63 trustees were to pay the trust corpus and accumulated income to the trustees under the correlative trust created for his brother, to be held by them under the terms of such trust. If the son died without issue and his brother did not survive him, the trust property was to be distributed to the brother's lawful issue, and if the brother should leave no lawful issue, the trustees were directed to pay over and deliver the trust property to petitioner, if he be then living, or if not then living, they were directed to deliver the trust property to his executor or administrator, to be administered as part of his estate. As long as petitioner acted as a trustee, the trustees were given very broad powers in the management of the trust. Also, while petitioner acted as a trustee, his co-trustee agreed to join with him, upon his written directions, in exercising any of the powers which the trust indentures authorized during petitioner's term as a trustee. Each indenture contains the following clause: "11. Upon the written direction of said Hiram C. Bloomingdale, one of the trustees hereinabove named, and so long as he continues to act as a trustee hereunder, the trustees at any time acting *64 with him hereby agree to join with him in the exercise or omitting to exercise any power, authority or discretion given to them by this instrument, and in such case the trustees shall not be under any liability to any person now or hereafter interested in the trust hereby created for any loss to the trust estate resulting from the trustees' action or omission to act in reliance upon such written direction of the said Hiram C. Bloomingdale." However, after petitioner shall cease to act as a trustee, the trustees acting under the trusts are limited in their powers, and they are restricted in the investments they should make of trust funds to securities and property which the laws of New York permit trustees to make. There is an exculpatory clause in each trust relieving trustees from liability for loss or depreciation in value of trust property except for wilful misfeasance and bad faith. On November 22, 1940, petitioner resigned as trustee under each of the trust indentures. Pursuant to the provisions of the indentures. Samuel J. Bloomingdale (petitioner's brother), Lyman G. Bloomingdale, and Central Hanover Bank and Trust Company became successor trustees in place of petitioner *65 of the trust for Lyman. Samuel J. Bloomingdale, Central Hanover Bank and Trust Company, and Alfred Bloomingdale became successor trustees in place of petitioner of the trust for Alfred. These successor trustees, together with Wolfgang S. Schwabacher, were at all times thereafter in question the trustees of said trusts. Petitioner transferred to each of the trusts an identical amount of bonds of the B. Bros. Realty Corporation as follows: Date of Transfer
Face Amount
April 18, 1932
$100,000.00
November 22, 1933
200,000.00
June 8, 1934
200,000.00
December 26, 1934
500,000.00
July 30, 1935
500,000.00
August 8, 1935
100,000.00
There was never any disposition of or change in the securities contributed to and comprising the corpora of the trusts either by way of investment, reinvestment or otherwise, but such securities have been retained and held intact at all times by the trustees. The gross income of each of the trusts for each of the taxable years was $104,000 and the net income was the same, except for 1940, when it was $103,850. The net income from the trust for Lyman was all currently distributed to him in the taxable years. Petitioner's son, Alfred, became *66 21 years of age on April 15, 1937. The income for the portion of the year 1937 during which he was an infant was accumulated for his benefit. After he reached his majority, the accumulated income for 1937, together with the accumulations from prior years, amounting in the aggregate to $229,666.41, were paid to him. After Alfred attained his majority, all of the trust income was distributed to him currently. The income accumulated for Alfred during his minority was invested in Federal, state and municipal bonds. During the taxable year 1937, petitioner was fully able to support his son, Alfred, independent of any income from the trust, and in fact, none of the trust income was so used. Petitioner filed gift tax returns and paid gift tax upon the several gifts which he made to the trusts. Petitioner and his wife, Rosalind S. Bloomingdale, separated on April 22, 1919, and on March 13, 1920, entered into a separation agreement. That agreement provided that petitioner would pay $1,500 per month to the said Rosalind S. Bloomingdale for her maintenance and support as long as she should live and remain unmarried. It was further provided that petitioner would pay to his wife $333.33 per *67 month for the maintenance and support of his son, Lyman, and a similar sum for the maintenance and support of his son, Alfred, as long as they remained in her custody. On April 17, 1920, petitioner's wife obtained a decree of divorce from petitioner in the District Court of Nevada, White Pine County, Nevada. After the divorce, petitioner's children lived with their mother and spent only occasional week-ends with their father. For so long as petitioner acted as one of the trustees under each trust, the trustees were given the authority and power to do the following: (a) To invest in securities and property whether "speculative, precarious, or otherwise", and to use the trust property in such manner as petitioner in his sole and uncontrolled discretion should see fit. (b) To buy, sell, exchange, and deal in any securities and property, either on margin or otherwise, as petitioner might select or approve. (c) To conduct a speculative account with any brokerage house which petitioner might select or approve. Such account could be carried in the name of any one or all of the trustees, either individually or as trustee, or under any such fictitious name or other designation as petitioner *68 should determine or approve. Also, the trustees could use the trust property in any transaction or speculation in which the trustees might be interested, provided consent was given by petitioner. (d) To borrow money in such sums as petitioner should approve and at interest rates which he deemed advisable, and to pledge the trust property to secure such borrowings. (e) To sell or exchange any or all of the trust property and to reinvest the proceeds, even though the securities or property so acquired might not be of the character prescribed by New York laws for the investment of trust funds, and even though speculative, precarious, or otherwise; and to use such trust property in such manner as petitioner in his sole discretion should deem proper. (f) The trustees and any firm of which either might be a member and any corporation in which either might be interested, could "contract in any manner with the trustees * * * as if a stranger". (g) It was expressly understood that the above enumerated powers conferred on the trustees should not be construed as limiting or restricting them, and it was intended that so long as petitioner should act as a trustee, the authorizations set forth *69 were "to confer upon the trustees the fullest and broadest powers to deal with the trust property and estate and to use and employ the same in any and every manner that the said Hiram C. Bloomingdale may see fit". The indentures also give authority to trustees "at any time acting" to hold, in their discretion, any securities or property delivered to them by the grantor; and, in respect to any investments constituting the trust property, to join in any reorganization, merger, consolidation, or exchange; and to determine whether any dividends received shall be added to principal or treated as income; and to make distributions in kind or in cash; and to do other things which trustees are usually empowered to do. In the trust for the benefit of Lyman, the following clauses appear, and identical clauses are in the trust for the benefit of Alfred: "(c) The TRUSTEES hereinabove named shall have the right and power, and are hereby authorized and directed, upon and pursuant to the determination and instruction in writing of Hiram C. Bloomingdale, one of the said trustees, in his sole and uncontrolled discretion, either to postpone to some future time or from time to time and withhold and *70 retain within the trust, any part or all of the portion or portions of the capital or principal of the trust property and estate hereinbefore directed to be paid over and delivered to the said Lyman G. Bloomingdale upon his attaining the ages of thirty (30), thirty-five (35) and forty (40) years. "(d) At any time after the said Lyman G. Bloomingdale shall have attained the age of twenty-one (21) years, the TRUSTEES hereinafter named shall have the right and power, and are hereby authorized and directed (anything herein contained to the contrary notwithstanding), upon and pursuant to the determination and instruction in writing of Hiram C. Bloomingdale, one of the said trustees, if in his sole and uncontrolled judgment and discretion he shall deem it wise and prudent and for the best interest of the said Lyman G. Bloomingdale so to do, to pay over and deliver to him either the whole or any part or parts of the capital or principal of the trust property and estate herein directed to be held in trust for him; and in the event that all of the trust property and estate is paid over and delivered, the trust hereby created shall in all respects thereupon cease and terminate." The parties *71 have stipulated that petitioner is entitled to non-business expense deductions for 1939 and 1940 in the amounts of $6,605.53 and $6,322.39, respectively. The amount of tax due and payable as reported by petitioner on his income tax return for 1939 was $26,033.13, which amount was paid by petitioner as follows: Date
Amount
March 15, 1940
$6,508.29
June 15, 1940
6,508.28
September 14, 1940
6,508.28
December 7, 1940
6,508.28 An additional payment of income tax for 1939 was made by petitioner on August 12, 1941, in the amount of $3,215.32. Claim for refund in the amount of $3,276.76 was filed by petitioner on March 11, 1943, covering the aforesaid non-business expense deduction of $6,605.53 for the year 1939. The amount of tax due and payable as reported by the petitioner on his income tax return for the taxable year 1940 was $33,982.52, which amount was paid as follows: Date
Amount
March 12, 1941
$8,495.63
June 4, 1941
8,495.63
September 8, 1941
8,495.63
December 8, 1941
8,495.63
An additional payment of income tax for the year 1940 was made by petitioner on November 6, 1942, in the amount of $229.05. The statutory notice of deficiency from which the *72 instant appeal was filed was sent to the petitioner by registered mail on March 15, 1943. The petitioner filed his Federal income tax returns for the calendar years 1937, 1938, 1939 and 1940 with the collector of Internal Revenue for the third district of New York on June 13, 1938, March 15, 1939, March 15, 1940, and March 15, 1941, respectively. The amounts of gross income stated in said returns for the calendar years 1937 and 1938 were $266,507.01 and $89,632.55, respectively. Opinion Respondent contends that petitioner is taxable on all of the income of the two trusts in all of the taxable years under section 22 (a) of the Internal Revenue Code as interpreted by Helvering v. Clifford, 309 U.S. 331; that the income is taxable to petitioner under section 166 also; and that section 167 is applicable also, with respect to the trust created for Alfred for the period in 1937 during which Alfred was a minor, under the doctrine of Helvering v. Stuart, 317 U.S. 154. Under clause 11 of each trust, any cotrustee of petitioner agreed to join with him in his exercise of powers as trustee upon the written direction of petitioner, *73 and also agreed to join with him in omitting to exercise any powers. Petitioner was, therefore, for all practical purposes the sole trustee in the taxable years. Petitioner agrees with that conclusion. The main question grows out of the exceedingly broad powers of management which the trustees had during the taxable years. Except for part of 1937, Alfred was an adult, and Lyman was an adult, so that it is not necessary to give any extensive consideration to the powers of the trustees over the disposition of the trust income. The trusts were irrevocable and the grantor relinquished power to amend, alter, or modify the provisions of the indentures. The trusts were to continue at least until the income beneficiary attained his majority but, at that time, if petitioner then acted as a trustee, all of the trust estate could be distributed to the beneficiary and the trust could be terminated. That was the situation during the taxable year until November of 1940. However, under such termination of the trusts, none of the property in the trusts could be distributed to petitioner. Otherwise, the trusts were to continue for a considerable length of time. During the taxable years, petitioner *74 and Schwabacher could not exercise the power to postpone the distribution of any of the principal of the trusts because neither beneficiary had attained the age of 30 years during the period here involved, and this power, covered by paragraph 1 (c) of the indentures could only be exercised by the original trustees and while petitioner was a trustee. It is not necessary to give consideration to the powers set forth in said paragraph. We turn, therefore, to the main question. It is whether the broad powers of management of the trust property which reposed in petitioner as the virtual sole trustee in the taxable years were such as to bring petitioner, the grantor, within the scope of section 22 (a). In W. C. Cartinhour, 3 T.C. 482, 489, we considered this question. Citing authorities, we stated it to be an established principle that "The power to manage trust property, however unlimited, may not operate to bring the grantor within the provisions of section 22 (a) if by virtue of such power he can not derive any economic benefit therefrom except whatever advantages he may gain by virtue of the statutory provisions which permit the creation of trusts and *75 estates". Commissioner v. Branch, 114 Fed. (2d) 985; Jones v. Norris, 122 Fed. (2d) 6. On the other hand, it must be said that the taxpayer is the owner of income if economic gain may be obtained through complete control of a trust. Helvering v. Stuart, supra.The crux of the question is whether the grantor-trustee of a trust can derive economic benefit from the broad powers of management vested in him as a trustee. Petitioner had very broad powers of management of the trust property through his right to determine what investments could be made. The striking feature is the lack of restraint upon petitioner in the exercise of his judgment. Margin accounts could be conducted for the trust and any type investment could be made, whether speculative or precarious. But this broad authorization to petitioner as the virtually sole trustee was given to him in his fiduciary capacity, as trustee, and not as an individual, and in itself it does not plainly indicate that petitioner could obtain economic gain to himself in the exercise of such unrestricted judgment even if he had chosen to use *76 it, which he did not. More critical is the authorization to the trustees, while petitioner is one of them, to use and employ the trust property in any transaction or speculation in which the trustees may at any time be interested, if the consent of petitioner is given. Does this open the door to petitioner to realize economic gain for himself through his command over the use of the trust property? This is not an easy question to answer because; (1) the power was never exercised, and (2) the realm of supposing possible uses of the power is very broad. We think the answer must be found in the checks to which fiduciaries are subject under New York laws. See Estate of Benjamin Lowenstein, 3 T.C. 1133. It must be assumed that petitioner, virtually the sole trustee, in exercising this power would have to deal fairly on behalf of the trusts so as not to waste the trust assets for his personal advantage. Paragraph 5 (g) of the trust indentures provides that the trustees and any firm or corporation in which they are interested may contract with the trustees in any manner, "as if with a stranger". This clause in itself appears to be a guide to how the broad *77 power above referred to is to be used, (paragraph 5 (c)). If the trustees deal with themselves as individuals in investing the trust property, or in any enterprise in which they, as individuals are interested, as they may do under the broad powers of management, they must proceed as they would do with strangers, under an express provision of each indenture. It is pointed out, again, that the trustees, or the virtually sole trustee, had no control over the use of the trust income in the taxable years, except in a short interval under one trust, which is immaterial at this point. The grantor, petitioner, had stripped himself of the income. The powers of management which petitioner could exercise were in him as a fiduciary and not as an individual. In the exercise of those powers, there is no clear indication that petitioner, as an individual, could realize any economic gain without a quid pro quo arrangement with the trusts, as in any arms-length transaction. "A trustee cannot administer a trust to his personal advantage." Estate of Benjamin Lowenstein, supra.Under these considerations, section 22 (a) does not apply. Respondent's argument that *78 the income of the trusts is taxable to petitioner under section 166 is rejected on the authority of Estate of Benjamin Lowenstein, supra. It is unnecessary to restate the reasoning there applied, and it is sufficient to state that it applies here to the present trusts which are to be construed in accordance with the laws of the State of New York. There remains for consideration the matter of the application of section 167 to the trust for Alfred during part of the year 1937 when he was a minor. Under the trust indentures, the trustees could pay trust income in their discretion to petitioner for the support of the beneficiary. However, this was not done. None of the trust income was used for the support of Alfred during 1937. On brief, petitioner relies upon I.T. 3609, C.B. 1943, 505, and section 134 of the Revenue Act of 1943, which amends section 167. The amendment provides that income of a trust shall not be considered taxable to the grantor under section 167 merely because such income, in the discretion of the trustee, may be applied or distributed for the support or maintenance of a beneficiary whom the grantor is legally obligated to support *79 or maintain, if in fact such income was not so applied or distributed. The amendment is retroactive to the taxable years if the taxpayer complies with the conditions set forth in section 134 (b) (2) of the Revenue Act of 1943. Petitioner apparently intends to comply with these conditions. We assume that the matter will be disposed of under a Rule 50 computation. See W. C. Cartinhour, supra;J. O. Whiteley, 3 T.C. 1265. Under the holding, petitioner will be entitled to a refund for some of the taxable years. Accordingly, Decision will be entered under Rule 50.