FREDERICK B. RENTSCHLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 108402.   Promulgated March 23, 1943.

*Rollin Browne, Esq.*, and *George Craven, Esq.*, for the petitioner.
*Charles P. Reilly, Esq.*, and *J. T. Haslam, Esq.*, for the respondent.

### OPINION.

TURNER, *Judge:* The petitioner questions the correctness of the respondent's determination of an income tax deficiency of $84,548.75 for the year 1937.   The case was submitted under Rule 30 (a) of the Court's Rules of Practice, and the facts are found as stipulated by the parties.

Questions presented are (1) whether the income of a trust which the petitioner created, naming his wife and his descendants as beneficiaries, is taxable to him under section 22 (a) of the Revenue Act of 1936; (2) if the income is taxable to him, whether commissions paid to the corporate trustee are deductible in determining his net income; and (3) whether he is entitled to a deduction for that portion of the salary paid to his secretary which is allocable to her services in connection with his investments.

The petitioner is a resident of West Hartford, Connecticut, and at all times during 1937 was living with his wife, Faye Belden Rentschler. They have two children, who were born on July 30, 1926, and October 22, 1927, respectively.

On May 21, 1935, the petitioner created a trust with the City Bank Farmers Trust Co. and Faye Belden Rentschler as trustees and transferred to the trustees securities having a fair market value of $751,-337.50, of which $252,500 was the value of 20,000 shares of United

Aircraft Co., of which the petitioner was at that time chairman of the board of directors. On July 17, 1935, he transferred to the trustees additional securities having a fair market value on that date of $992,900. All of the securities so transferred were listed on the New York Stock Exchange and at no time since the creation of the trust have the trustees held any securities which were not listed on that exchange. The said securities at all times since the creation of the trust have been held in the custody of the officers and employees of the City Bank Farmers Trust Co. in its vaults. Upon the death of the individual trustee the corporate trustee is to become the sole trustee.

By the terms of the trust the income is to go to the use of Faye Belden Rentschler, petitioner's wife, during her lifetime. Upon her death the principal is to be divided into equal shares according to the number of petitioner's children and the income of one share is to be paid over to each child, and upon the death of a child the principal of that child's share is to be paid to the descendants of such child in equal shares *per stirpes*, and if there are no descendants, to the descendants of the settlor. It is provided by the second article of the trust that "the Trustees may apply to the use of the Settlor's said wife and his descendants, or any of them, so much of the principal of the trust, and at such time or times, as in their discretion they may deem advisable for any such person's proper education, care, comfort or support."

"Subject to the Settlor's control during his life" the trustees are empowered (1) to retain the property received from the petitioner and other property as an investment without regard to restrictions by law or any rule of court as to the investment of trust funds; (2) to sell the property publicly or privately or for cash or credit; (3) to invest and reinvest the trust funds without restriction as to the class of securities authorized by law or any rule of court for the investment of trust funds; (4) to participate in any plan of reorganization, consolidation, merger, combination or similar plan; and (5) to exercise subscription, voting, and other rights pertaining to the property held and to grant proxies with respect thereto. It is specifically provided, however, that the above powers may be exercised "only as the Settlor shall from time to time direct in writing" and in the absence of written directions the trustees must retain the property held by them, but "may exercise any right to vote and grant proxies, discretionary or otherwise, with respect thereto." They incur no liability for any action taken or omitted pursuant to the settlor's written directions or for omission to take any action in the absence of such directions.

The trustees are authorized in their discretion "without liability

for loss, to lend money with or without security to the Settlor's estate, and to purchase property of any character from the Settlor's estate and retain such property so long as they may deem advisable, whether or not such property is of the class in which trustees are authorized by law to invest trust funds."

The settlor by specific provision reserved the "right, at any time and from time to time, by a writing delivered to the Trustees * * * to modify or alter any of the provisions of this instrument relating to the Trustees or their power, authority and responsibility with respect to the trust estate and the administration thereof." As a part of the same provision it is provided that the settlor shall not "have the power to revoke or terminate this trust or to make any change in the use or enjoyment of the trust property or of the income thereof."

The trust since its creation has continued in existence according to its terms.

In the administration of the trust the officer of City Bank Farmers Trust Co. in charge of the trust has from time to time reviewed the trust assets and made recommendations to the petitioner for changes in the investments and has discussed with the petitioner the advisability of making changes. In all such instances the said officer and the petitioner have agreed upon the course of action to be taken and then in order to protect the trust company the officer has secured from the petitioner his written direction or authorization for the action agreed upon. In many instances, before the trustees have executed proxies for the voting of stock held in the trust, the said officer of the trust company has notified the petitioner of such contemplated action and has secured the petitioner's approval thereof. Except as aforesaid the petitioner has never exercised any control or power reserved to him in the management or supervision of the trust properties. In all instances where any of the matters referred to have been taken up with the petitioner by correspondence, the officer of the trust company has also sent the same information to Faye Belden Rentschler, and in most of such instances has secured her written approval of the action agreed upon between him and the petitioner. The said officer of the trust company has also conferred with Faye Belden Rentschler on a number of occasions with respect to the trust. No proxies have ever been given by the trustees to the petitioner to vote any stock held in trust.

All dividends and interest paid since the creation of the trust on the stocks and bonds held in trust have been received by the trust company and, after deducting amounts chargeable against the income of said trust, have been remitted regularly to Faye Belden Rentschler.

On or about March 15, 1936, the petitioner duly executed and filed a Federal gift tax return for the year 1935 with the collector of internal

revenue at Hartford, Connecticut. He reported on his return the transfers resulting from the creation of the trust and the additions thereto as transfers subject to Federal gift tax and paid to the collector a gift tax in the amount of $285,197.77. No part of the said gift tax has since been credited or refunded to the petitioner.

The net income of the trust for 1937, without deduction for trustee's commissions of $3,551.24, amounted to $124,440.61. The balance of the trust income after deduction of such commissions, or $120,889.37, was paid and distributed to Faye Belden Rentschler on or about March 14, 1938. Faye Belden Rentschler filed with the collector of internal revenue at Hartford, Connecticut, her separate Federal income tax return for the year 1937, in which she included $120,850.63 as the amount of the ordinary distributable net income of the said trust. The tax shown on the return in the amount of $45,665.57 was paid to the collector in quarterly installments in 1938, and no part thereof has been credited or refunded to her. The petitioner did not include any part of the trust income in his individual income tax return which for the year 1937 was filed with the collector of internal revenue at Hartford, Connecticut. The net income of the petitioner for the year 1937, exclusive of any income of the trust, was $182,526.39.

The respondent has determined that the income of the trust is taxable to the petitioner, basing his determination on the pronouncements of the Supreme Court in *Helvering* v. *Clifford*, 309 U. S. 331. The petitioner argues that the *Clifford* case is not applicable, contending that he parted irrevocably with the trust assets and that the powers reserved are not such as to make the income of the trust his income.

As in the *Clifford* case, the grantor here has no right, according to the terms of the trust instrument, to receive any of the trust income and similarly he did not receive any of the income, all of which was paid to Faye Belden Rentschler, the grantor's wife and the beneficiary entitled during the taxable year to receive it. It is thus apparent that if the income is taxable to the petitioner it is because the petitioner's dominion and control over the trust corpus, as in the *Clifford* case, are such as to make the income therefrom his income under section 22 (a) of the statute.

Contending that the *Clifford* case is inapplicable, the petitioner argues that "the really significant feature of the *Clifford* case was the short term of the trust, plus the reversion of the trust corpus to the settlor or his estate at the termination of the trust." The argument that the doctrine of the *Clifford* case is applicable only where the trusts involved are short term trusts has been considered and rejected in numerous cases. *Commissioner* v. *Buck*, 120 Fed. (2d) 775; *Ellis H. Warren*, 45 B. T. A. 379; affd., 133 Fed. (2d) 312; *Verne Marshall*, 1 T. C. 442; *Morton Stein*, 41 B. T. A. 994; *Reginald*

*B. Parsons*, 44 B. T. A. 1142. See also *Helvering* v. *Elias*, 122 Fed. (2d) 171. Furthermore, the applicability of the *Clifford* case has not been limited to cases where the trust instrument provides specifically for reverter or possibility of reverter of the corpus to the grantor. *Ellis H. Warren, supra.* The test is the degree of dominion and control which the grantor has over the trust property.

The grantor here is not the trustee, as in the *Clifford* case, but his dominion and control over the trust property is as complete as if he were trustee, for during his life the trustees are required to exercise their power over the investment and reinvestment of the trust funds, the sale of trust property, the participation in plans of reorganization, consolidation, or merger and to perform any and all acts of management only as the petitioner from time to time directs in writing, and they incur no liability for any action taken or omitted pursuant to the settlor's written directions or for omission to take any action in the absence of such direction. In fact, they have no power in the absence of written directions from the petitioner to do anything but hold the property then in hand except that they may under such circumstances vote or issue proxies on corporate stocks.

The petitioner, citing and relying on *Emma B. Maloy*, 45 B. T. A. 1104, and *Christopher L. Ward*, 40 B. T. A. 225, seeks to minimize the significance of the rights and powers retained by the grantor by classifying them as powers over investments and therefore "merely powers in trust which must be exercised exclusively for the benefit of the trust and its beneficiaries." If the powers reserved are merely powers to supervise and direct the investment of the trust corpus, nothing more, the cases cited would seem to be in point. The facts show, however, that the rights and powers reserved by the petitioner in and to the trust properties go far beyond the power to direct investments. In addition to his reserved power to direct and control the trustees in all their dealings with the trust property, the petitioner has also reserved the power at any time to change all provisions of the trust instrument "relating to the Trustees or their power, authority and responsibility with respect to the trust estate and the administration thereof" so long as he does not revoke the trust or dispose of the trust corpus or the income therefrom to some purpose not already allowed under the trust instrument. Among the uses of the trust corpus which are prescribed or allowed by the trust instrument are the making of loans to the petitioner without liability to the trustees for loss and with or without security and the purchasing of property of any character from him whether or not such property is of the class in which trustees are authorized by law to invest trust funds; and while there is no reversion or possibility of reverter, as such, the trust instrument by

specific provision permits the use of the corpus to the extent the trustees in their discretion may deem advisable to satisfy the obligation of the petitioner for the education, care, comfort, or support of his wife and children, the said children being minors in the taxable year. Through reserved powers to control the trustees in their activities with respect to the trust property and his power to modify or alter any of the provisions of the trust instrument "relating to the Trustees or their power, authority and responsibility with respect to the trust estate," the petitioner is in a position at any time he chooses to substitute his discretion for that of the trustees in all of the above matters. The right and power to have the corpus appropriated to the above uses are even broader in some respects than the rights retained by the grantor in the *Clifford* case. In that case the grantor had no right during the term of the trust to make loans to himself or to divert the corpus to the satisfaction of his personal obligations. Such uses were not permissible there until the trust had terminated and the property had reverted to the grantor. Here the petitioner has the power to have the corpus diverted to such uses at any time. Cf. *Helvering* v. *Stuart*, 317 U. S. 154.

The property so transferred to trust consisted of stocks of business corporations, and while the shares involved did not represent mathematically a substantial percentage of the outstanding shares of the various corporations, the petitioner took particular pains to retain in himself full power over those shares, including the voting thereof and their use in any merger, consolidation, or other plan of reorganization. The largest single block of stock was in the United Aircraft Co., of which the petitioner was chairman of the board of directors, later becoming chairman of the corporation as well. This block of stock represented in value approximately one-third of all securities conveyed to the trust when it was created on May 21, 1935, and approximately one-seventh of the securities conveyed on both May 21 and July 17 of 1935. The United Aircraft shares originally so held amounted to 20,000 shares and during the period of the trust ranged from that figure to 24,000 shares, while during the same period the total number of shares outstanding has ranged between 2,000,000 and 2,400,000 shares. Although the number of shares held by the trust has been comparatively small, it is noted that the petitioner, his wife, and his family have owned and still own some 30,000 additional shares of such stock, while the total shares outstanding are held by approximately 33,000 stockholders, or on an average, approximately 80 shares per stockholder. Considering the above facts, particularly the petitioner's position in the United Aircraft Co., it is not at all likely that he would be indifferent to what was done with the United Aircraft

stock transferred to the trustees, all of which may to some extent account for the retention of dominion and complete control over the said stock.

Considering the terms of the trust and the rights and powers retained thereunder by the petitioner in and to the trust properties, the Supreme Court, in our opinion, might well have been speaking of this case when, in *Helvering* v. *Clifford, supra*, it said:

* * * We have at best a temporary reallocation of income within an intimate family group. Since the income remains in the family and since the husband retains control over the investment, he has rather complete assurance that the trust will not effect any substantial change in his economic position. It is hard to imagine that respondent felt himself the poorer after this trust had been executed or, if he did, that it had any rational foundation in fact. For as a result of the terms of the trust and the intimacy of the familial relationship respondent retained the substance of full enjoyment of all the rights which previously he had in the property. That might not be true if only strictly legal rights were considered. But when the benefits flowing to him indirectly through the wife are added to the legal rights he retained, the aggregate may be said to be a fair equivalent of what he previously had. To exclude from the aggregate those indirect benefits would be to deprive § 22 (a) of considerable vitality and to treat as immaterial what may be highly relevant considerations in the creation of such family trusts. For where the head of the household has income in excess of normal needs, it may well make but little difference to him (except income-tax-wise) where portions of that income are routed—so long as it stays in the family group. In those circumstances the all-important factor might be retention by him of control over the principal. With that control in his hands he would keep direct command over all that he needed to remain in substantially the same financial situation as before. Our point here is that no one fact is normally decisive but that all considerations and circumstances of the kind we have mentioned are relevant to the question of ownership and are appropriate foundations for findings on that issue. Thus, where, as in this case, the benefits directly or indirectly retained blend so imperceptibly with the normal concepts of full ownership, we cannot say that the triers of fact committed reversible error when they found that the husband was the owner of the corpus for the purposes of § 22 (a). To hold otherwise would be to treat the wife as a complete stranger; to let mere formalism obscure the normal consequences of family solidarity; and to force concepts of ownership to be fashioned out of legal niceties which may have little or no significance in such household arrangements.

The respondent is accordingly sustained in his determination that the income of the trust is taxable to the petitioner under section 22 (a), *supra*, of the statute.

Since the submission of this case, Congress, by section 121 (a) (2) of the Revenue Act of 1942, has disposed of the second and third issues by providing for the deduction of the expenditures there claimed.

*Decision will be entered under Rule 50.*