Murphy Shannon Armstrong, Petitioner, *v*. Commissioner of Internal Revenue, Respondent.

Gayle Geard Armstrong, Petitioner, *v*. Commissioner of Internal Revenue, Respondent.

Docket Nos. 108250, 108251. Promulgated April 27, 1943.

*Stephen H. Hart, Esq.*, and *Irving Hale, Jr., Esq.*, for the petitioners.

*Gene W. Reardon, Esq.*, for the respondent.

1014

OPINION.

OPPER, *Judge:* The effect upon petitioner's tax liability of the purported transfer to his children of a part of his interest in a family partnership seems to us to turn, in this instance, not so much upon the peculiarities of the assignment of partnership shares, cf. *Burnet* v. *Leininger*, 285 U. S. 136, as upon the trust form which petitioner selected to execute the gift and the bearing upon these facts of the principles of *Helvering* v. *Clifford*, 309 U. S. 331.

As in the *Clifford* case, petitioner placed himself in complete practical control over the property constituting the trust, which here was the partnership interest. He was "to have and exercise all of the powers and privileges of an owner," and was "vested with all powers in connection with said Trust Estate which an individual could lawfully exercise over his own individual property or estate." As in the *Clifford* case he was authorized "to hold property of the Trust Estate in his own name or in the name of his nominee or appointee, with or without disclosure of fiduciary relationship." As in the *Clifford* case, "the Trustee's decision in all matters concerning the Trust Estate shall be final and conclusive on all persons interested in this Trust or the Trust Estate," the beneficiaries could not demand any part of the principal and income until the trust came to an end, and they had no interest which could be anticipated, alienated, "or in any manner" assigned. While the trustee could "invest the principal and the income that is accumulated in any property or securities, whether or not permissible by law for investment of trust funds" and "shall not be held to account for any losses incurred   *   *   *   on account of his errors in judgment or discretions," he was entitled "to reimburse himself from the income or principal   *   *   *   for any loss, liability or expense incurred by reason of his ownership or holding of any property received or held in trust hereunder," and he could "make advances of his own funds to the Trust Estate for any purposes, such advances with interest

thereon.to constitute a first lien on the whole of the Trust Estate and gross income therefrom, and to be first repaid out of the gross income, or in the discretion of the Trustee the principal."

To any assertion that these were powers of a trustee and not of petitioner as the owner of income-producing property and the head of a family, there are two answers. The first is to quote from the opinion in the *Clifford* case:

\* \* \* If it be said that such control is the type of dominion exercised by any trustee, the answer is simple. (We have at best a temporary reallocation of income within an intimate family group. \* \* \* In those circumstances the all-important factor might be retention by him of control over the principal.

The second is that throughout the instrument creating the trust petitioner in his individual capacity is indiscriminately referred to as "Trustee." For example, "the undersigned Trustee shall have \* \* \* the following powers and discretions:

(g) \* \* \* To make advances of his own funds to the Trust Estate \* \* \* and to be first repaid \* \* \*. To reimburse himself from the income or principal of the Trust Estate \* \* \*.

These are evident references to the petitioner in his individual capacity, to his individual claims, and to his individual property. The opening sentence of the recital states that "Gayle G. Armstrong of Roswell, New Mexico," is "hereinafter referred to as 'Trustee.'" It is thus impossible from the language of the instrument to distinguish what reference is intended as imposing an obligation of a fiduciary character from what is designed to grant to the individual known as Gayle G. Armstrong the inclusive powers and discretions which the trust instrument confers.

These considerations, coupled with the element that the subject matter of the trust was the family business of which petitioner was the operating head and that the trust's interest combined with his own gave him majority control, bring the present controversy within the field of the principle of such cases as *Frank G. Hoover*, 42 B. T. A. 786, decided on the authority of *Helvering* v. *Clifford*. We there pointed out:

\* \* \* The "principal investment" of the trust was stock of the company in which petitioner was "actively interested."

\* \* \* Petitioner \* \* \* does remain in a position to participate in the affairs of the business in which he is actively interested, a prerogative which proceeds from the retained equivalent of ownership of his interest in that enterprise. This is an attribute of proprietorship frequently of greater significance than the right to receive income. When we combine it with the power to force the retention of that investment and the "benefits flowing to him indirectly through the wife" [here the children] we can not avoid the conclusion that "With that control in his hands he would keep direct command over all that he needed to remain in substantially the same financial situation as before."

See also *Price* v. *Commissioner* (C. C. A., 6th Cir.), 132 Fed. (2d) 95. And that some such idea was in the mind of petitioner and his associates appears from the partnership agreement itself, where he is listed without further detail as the owner of an 11/20 or 55 percent interest, a result possible only by viewing him as exercising the combined control of his own share and that of the trust.

Petitioner concedes that the "factor in this case in common with the *Clifford* case is the broad power of management and control vested in the Petitioner as trustee." He asserts that "This broad power of control, however, stemmed chiefly from the partnership agreement." As we have seen, it arose from a combination of the partnership and the existence and structure of the trust. But it is hard to say that this detail is significant. The control over the partnership interest and the possibility of its exercise by means of the trust are the important factors. See *Ed Kasch*, 25 B. T. A. 284; affd. (C. C. A., 5th Cir.), 63 Fed. (2d) 466; certiorari denied, 290 U. S. 644. Petitioner retained it by the method in which he himself fashioned the trust in a way and to an extent which would not have been possible had he made a complete and outright gift. Cf. *Justin Potter*, 47 B. T. A. 607; but see *Schroder* v. *Commissioner* (C. C. A., 5th Cir.), 134 Fed. (2d) 346; *Earp* v. *Jones* (C. C. A., 10th Cir.), 131 Fed. (2d) 292; certiorari denied, 318 U. S. 764.

Nor are we able to agree with the assertion that this item of control is the sole analogy to the *Clifford* case. Certainly there was the same reallocation of income within petitioner's intimate family group. And in fact, the term of the trust, while not as short as that of the *Clifford* case, was still limited to 12 years, and might be less. The significance of the duration of the trust varies inversely with the extent of the grantor's control. *Howard Phipps*, 47 B. T. A. 357. Here, as we have seen, that is virtually complete. It is perhaps not without significance that all of the cases relied upon by petitioner, with the exception of *Justin Potter*, *supra*, were decided prior to the *Clifford* case.

So far, we have made no reference to the possibility, in addition to all that has been said, that the trust income was itself susceptible in petitioner's discretion of use in payment of expenses which we might otherwise expect to be a charge against the petitioner's personal funds. We can now take it as settled that it is this possibility, and not the extent of its occurrence, which renders a grantor taxable. *Helvering* v. *Stuart*, 317 U. S. 154. And the fact that such a use is made by the grantor-trustee himself is the best proof that the trust income is available for such purposes. *Frank C. Rand*, 40 B. T. A. 233; affd. (C. C. A., 8th Cir.), 116 Fed. (2d) 929; certiorari denied, 313 U. S. 594.

The evidence shows that funds of the trust were used to pay the law school expenses of one of the beneficiaries while he was still a minor. We need not dwell too long on whether a law school education is the sort of necessity for which a father is ordinarily held legally responsible. The duty of support would normally remain and these funds were in part used for that purpose. If the state law exculpated petitioner from that duty, he has not succeeded in showing it. *Helvering* v. *Fitch*, 309 U. S. 149. More than this, however, in the case of *Hill* v. *Commissioner* (C. C. A., 8th Cir.), 88 Fed. (2d) 941, now a landmark in this field, the argument was made that expenditures for petitioner's adult children were not legal obligations. "So much," says the Court:

may be conceded, if the matter were bottomed solely on a legal obligation to the children. * * *

* * * petitioner is a man of wealth, and the maintenance of a more or less elaborate establishment as a home for himself and his wife is in keeping with his estate and rank in life * * *

The maintenance, operation, and upkeep of a dwelling as a home for a man and his wife connote something more than the mere food and shelter for the two spouses alone. It includes a place to which friends and the children and other relatives of the man and his wife may come and visit and be socially entertained from time to time. So much inexorable custom would seem to dictate. Hardly, we think, may it successfully be contended that the provisions of the trust instrument here under inquiry had in contemplation or held within their intendments that the wife of one occupying the rank and station of the petitioner should be required to unduly limit her friendly and social duties * * *.

So here, it may be questioned whether it could have been intended that the son of a man of such substance as petitioner appears to be should be expected while still a minor to forego attendance at an institution of higher learning and support while engaging in his studies there. We mention these circumstances not because we intend, or consider it necessary, to pass upon the independent applicability to these facts of the doctrine of *Douglas* v. *Willcuts*, 296 U. S. 1, and its many counterparts, but rather, in view of the intimate connection between the theory of that case and *Clifford's*, to indicate an additional reason why it seems to us impossible to suggest that petitioner did not have effective benefits from both principal and income of the trust in controversy to an extent at least as great as those present in *Helvering* v. *Clifford*. We think the evidence bears overwhelmingly in that direction, and for the reasons stated we have found as an ultimate fact that petitioner remained the owner of the income in dispute and so was subject to tax upon it.

*Decisions will be entered for respondent.*