HERBERT T. CHERRY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LOUISE H. CHERRY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 110535, 110536. Promulgated July 31, 1944.

*Curtis Bush, Esq.*, for the petitioners.
*Gene W. Reardon, Esq.*, for the respondent.

OPINION.

MELLOTT, *Judge:* These consolidated proceedings involve deficiencies in income tax for the years 1939 and 1940 in the following amounts:

| Petitioner | Docket No. | Deficiency | |
|---|---|---|---|
| | | 1939 | 1940 |
| Herbert T. Cherry_____ | 110535 | $437.40 | $1,023.22 |
| Louise H. Cherry_____ | 110536 | 463.11 | 697.57 |

All of the facts have been stipulated and are found accordingly. The sole issue is whether dividends paid by the Cherry-Burrell Corporation of Chicago, Illinois, upon some of its stock to trusts created by petitioners are includible in petitioners' gross incomes.

Petitioners, sometimes hereinafter referred to as Herbert and Louise, are husband and wife and residents of Tama, Iowa. Each filed separate returns of income for the taxable years with the collector of internal revenue at Des Moines, Iowa.

On December 17, 1938, each of the petitioners created a trust. In each indenture it is stated that the settlor desires to place certain property in trust for the use and benefit of the settlor's spouse in order to provide for his (her) comfort and convenience during life and for their children after death. Each indenture names the settlor, his or her son, Leonard H. Cherry, daughter, Gladys C. Clark, and Merchants National Bank of Cedar Rapids, Iowa, as trustees. Each was acknowledged by the individuals on December 19, 1938, and by the bank on December 23, 1938.

At the time of the execution of the trust indentures Herbert transferred in trust to the trustees thereof 2,400 shares of the common stock of Cherry-Burrell Corporation of the par value of $5 per share. Thereafter he was still the owner in his individual name of 2,922 other shares of said stock. Louise at the time of the execution of her trust indenture transferred to the trustees 3,800 shares of the common stock of Cherry-Burrell Corporation of the par value of $5 per share. Thereafter she was still the owner in her individual name of 8,200 other shares of said stock and of 440 shares of the 5 percent preferred stock $100 par value of the same corporation. Herbert's trust indenture provides for the payment to his wife during her lifetime of a sum not exceeding $2,400 per annum and Louise's trust indenture provides for the payment to her husband during his lifetime of the sum of $3,800 per annum.

In all material respects the provisions of the two trust indentures are identical. No effort will be made to make a complete summary

of them.  Each trust is irrevocable and can not be altered or amended, though each trustor may give or transfer additional property in trust to be held in such manner as may be directed.  Pursuant to the provisions last referred to, Herbert, on or about August 27, 1940, transferred to the trustees 2,000 shares of the $5 par value common stock of the Cherry-Burrell Corporation, after which he remained the owner in his individual name of 922 other shares of said stock.  On the same date Louise transferred to the trustees of her trust an additional 1,000 shares of the common stock of Cherry-Burrell Corporation, after which she was still the owner in her individual name of 7,000 other shares of said common stock and 350 shares of 5 percent preferred stock of the same corporation.

The quotations hereinafter set out are from the indenture executed by Herbert.

Paragraph 5, subdivision III, reads as follows:

5. Except as hereinotherwise provided, during his lifetime and so long as he remains legally competent the said H. T. Cherry, as a Trustee hereunder, shall exercise and be possessed of all of the discretionary powers of the Trustees herein and all matters concerning the management and investment of the property of this Trust shall be determined and directed by him, as in his discretion he may consider advisable or advantageous to this Trust, and he shall not be limited in such investment to the classes of securities permitted by law for the investment of trust funds nor required to report to nor obtain the approval of any court therefor, and he shall have full power to at any time and in any way acquire, encumber, improve, or dispose of any securities or property in this Trust.  In case the said H. T. Cherry for any reason should become legally incompetent the remaining Trustees shall thereupon exercise all of the powers and duties of the Trustees for the duration of such legal incompetency.  Except as hereinabove qualified and limited, during Trustor's lifetime the Trustees shall exercise all of the powers and duties hereinafter provided to be exercised by them upon Trustor's decease.

Each trust provides that the settlor's spouse shall have power of appointment by will or other written instrument limited to the transferor's children or descendants of such children.  The children are likewise given power of appointment by last will or testament or by writing duly dated, signed, acknowledged, and deposited with the corporate trustee.  In the event of failure to appoint, the trust property and all income therefrom and increment thereto is to be paid by the trustees to the heirs at law of the transferor and spouse in the same proportion as such heir would be entitled in case each had owned an undivided one-half thereof and had died simultaneously and intestate.  The trusts are to terminate not later than 21 years after the death of the last survivor of the trustors and all beneficiaries who were living on the date the trusts were created.

Paragraph 10 of each trust may be characterized as "spendthrift" provisions, the essence being that neither principal nor income nor accumulation "shall be liable in any manner in the possession of the

trustees for the debts, contracts, engagements, liabilities or obligations * * * of any of the beneficiaries."

Paragraph 11 enumerates *in extenso* the powers of the trustees. They include the power to manage the trust property, to settle or compromise claims, to employ agents, to pay costs and expenses of management, to hold and lease real estate, to unite with other owners of property or securities similar to any held in trust in carrying out any plan for the liquidation or reorganization of a corporation whose securities may form a portion of the trust, and:

(f) to invest any part or all of either the principal of or income from or increment to this Trust and its property in whatever classes of securities or property which they may select or to make loans thereof on such collateral or personal security as may be satisfactory to the Trustees, and without being limited or confined in any way to the classes of securities provided by law for the investment of trust funds or property and without being required to report to, nor obtain the approval of, any court.

Under paragraph 21, the decision of a majority of the trustees shall prevail except as otherwise provided in paragraph 5 set out above. Paragraph 26 is as follows:

Wherever hereinabove the Trustees are vested with any discretionary powers, the exercise by the Trustees of such discretion shall be final and conclusive and no beneficiary shall have any right to contest or question the exercise of such discretion or to compel such discretion to be exercised in any particular manner, and the Trustees shall not be liable to any beneficiary by reason of the exercise of such discretionary powers.

During the lifetime of the personal trustees the corporate trustee is to be the custodian of the property of the trust and to keep all of the records, "* * * but shall have no other power hereunder other than in an advisory capacity, and all discretionary powers granted herein shall be exercised solely by the personal trustees." In case all of the personal trustees should cease to act as such, then the corporate trustee is to have all the powers, discretionary and otherwise, but its investment powers shall be limited to investment in the classes of securities permitted by the laws of Iowa for the investment of trust funds, except in connection with reorganizations or exchanges and as to property which may be a part of the trust at the time the corporate trustee becomes the sole trustee.

During the trustor's lifetime the trustees are required to pay from the property of the trust to the settlor's spouse the "annuity" mentioned above ($2,400 annually to Louise and $3,800 annually to Herbert). In case the "annuitant" should predecease the transferor, "the trustees may then, as may be determined by the corporate trustee in its discretion, either divide and distribute the property among the appointees * * * or * * * pay the income from the share of any such appointee to him or her during the remainder of trustor's life * * *." The trustees are to continue to pay the "annuities" during the remainder of the lifetime of the "annuitant":

\* \* \* or until all of the property in this trust shall have been so disbursed, provided, however, that Trustor's said children, or the survivor of them, or the Corporate Trustee in case neither of said children survive, shall have power to require to be paid or pay to him at any time such additional sums as they, he, she or it shall consider necessary or advisable for his comfort, pleasure or support, or to meet any emergencies affecting him.

At all times subsequent to the creation of the trusts "the trust assets and funds have been kept separate and apart as such and separate accounts and records have been kept for all trust transactions."

The Cherry-Burrell Corporation was formed by the merger of several companies, including the J. G. Cherry Co. around 1928. Herbert T. Cherry and his brothers grew up together in the J. G. Cherry Co. Herbert left the employ of Cherry-Burrell Corporation in March 1931, when it sold the paper mill at Tama. Iowa, to Central Fibre Products Co. in consideration of 32,076 shares of its common stock and 5,625 shares of its preferred stock, to which latter company Herbert went as its president. While Herbert during subsequent years has been retained as a director of Cherry-Burrell Corporation, he has not been active in said corporation since March 1931.

The names of the officers and directors of the Cherry-Burrell Corporation during the years 1939 and 1940 were as follows:

|  | 1939 | 1940 |
|---|---|---|
| Chairman | Loomis Burrell | Loomis Burrell. |
| President | W. L. Cherry | W. L. Cherry. |
| Vice president | J. W. Ladd | J. W. Ladd. |
| Secretary | A. H. Barber | S. B. Berg. |
| Treasurer | J. L. McIntyre | J. L. McIntyre. |
| Comptroller | | S. B. Berg |
| Director | Loomis Burrell | Loomis Burrell. |
| Do | W. L. Cherry | W. L. Cherry. |
| Do | J. W. Ladd | J. W. Ladd. |
| Do | A. H. Barber | S. B. Berg. |
| Do | D. H. Burrell, Jr | D. H. Burrell, Jr. |
| Do | E. W. Neumeister | E. W. Neumeister. |
| Do | P. R. Ziegler | P. R. Ziegler. |
| Do | A. von Wening | A. von Wening. |
| Do | H. H. Cherry | H. H. Cherry. |
| Do | Carl S. Bassott | J. L. McIntyre. |
| Do | H. T. Cherry | H. T. Cherry |

None of the officers and directors above named are related to petitioners, except that W. L. Cherry and H. H. Cherry are brothers of Herbert.

The capitalization of the Cherry-Burrell Corporation and the number of its stockholders during the years 1939 and 1940 were as follows:

| Capitalization | 1939 | 1940 |
|---|---|---|
| Common stock: | | |
| Shares authorized | $600,000 | $600,000 |
| Shares outstanding | 444,345 | 444,345 |
| Shares reserved (for sale to officers and employees) | | *25,000 |
| Shares treasury stock | 6,807 | 6,807 |
| 5% preferred stock (par value): | | |
| Shares authorized | 2,510,400 | 2,510,400 |
| Shares outstanding | 1,400,400 | 1,377,400 |
| Shares of treasury stock | 64,600 | 87,600 |
| Number of stockholders: | | |
| Common | 752 | 804 |
| 5% preferred | 106 | 103 |

*9,000 of these shares are subject to option (a), $10 per share.

Neither petitioner is an officer or director of Merchants National Bank of Cedar Rapids, Iowa, the corporate trustee under the trusts. H. H. Cherry, however, at the time of the creation of the trusts and during the taxable years was one of the directors of the bank.

In 1939 and 1940 the Cherry-Burrell Corporation paid dividends upon the common stock which had been transferred to the trusts. The amounts paid were as follows:

| Year | Trust | Amount |
|------|-------|--------|
| 1939 | Herbert T. Cherry trust | .1, 920 |
|      | Louise H. Cherry trust | :, 040 |
| 1940 | Herbert T. Cherry trust | 2, 540 |
|      | Louise H. Cherry trust | 3, 480 |

The dividends referred to above were received and accounted for by the trustees of the trusts in Federal fiduciary income tax returns and the trustees of Herbert's trust paid income tax of $70.80 thereon in 1939 and $103.94 in 1940. The trustees of Louise's trust paid Federal income tax of $114.56 and $142.79, respectively.

Each petitioner filed Federal gift tax returns covering the gifts made to the trusts on December 17, 1938, and August 27, 1940. Taxes in the amounts shown to be due were paid.

In the Federal income tax returns for the taxable year filed by each petitioner neither included in gross income the dividends paid by the Cherry-Burrell Corporation upon the stock transferred to the trusts. The Commissioner, in determining petitioners' income tax liabilities, included in Herbert T. Cherry's taxable income the dividends paid to the trust created by him and included in Louise H. Cherry's taxable income the dividends paid on the stock transferred to the trust created by her. The correctness of this action is the only issue, other adjustments having been conceded to be correct or the issue raised having been waived.

The principal question is whether respondent erred in determining that the income of each of the two trusts is taxable to the settlor under *Helvering* v. *Clifford*, 309 U. S. 331, and cases stemming from that decision.

The paragraphs of the trust indentures chiefly relied upon by the respondent have been set out in full. His contention is that the dominion and control retained by each settlor over the corpus and the income of the trust created by him was so complete that he remained, in substance, the owner of the corpus and the income.[1] In the alternative, he contends that the dividends constituted taxable income to each petitioner under section 166, I. R. C., because the retained powers

[1] *Commissioner* v. *Buck*, 120 Fed. (2d) 775; *Verne Marshall*, 1 T. C. 442; *Ellis H. Warren*, 45 B. T. A. 379; affd., 133 Fed. (2d) 312; *Frederick B. Rentschler*, 1 T. C. 814; on appeal C. C. A., 2d Cir.; *Murphy Shannon Armstrong*, 1 T. C. 1008; reversed, *Armstrong* v. *Commissioner*, 143 Fed. (2d) 700; *Williamson* v. *Commissioner*, 132 Fed. (2d) 489; *Charles F. Roeser*, 2 T. C. 298; and *Morton Stein*, 41 B. T. A. 994.

were sufficient to enable each settlor to revest in himself "title in the said shares of stock or other property held in trust." *Percy M. Chandler*, 41 B. T. A. 165; affd., 119 Fed. (2d) 623; *Commonwealth Trust Co. of Pittsburgh* v. *Driscoll*, 50 Fed. Supp. 949; affd., 137 Fed. (2d) 653; certiorari denied, 321 U. S. 764. Also that each settlor could, in his discretion, hold or accumulate for future distribution to himself, the dividends on the shares of stock transferred to the trusts and therefore the income is taxable under section 167, I. R. C. *Downie* v. *Commissioner*, 133 Fed. (2d) 899, affirming *John B. Downie*, 46 B. T. A. 937; *Georgia B. Lonsdale*, 42 B. T. A. 847.

Notwithstanding the welter of cases which have come before this tribunal and the appellate courts since the *Clifford* decision, there is still, as there was in 1941, "some uncertainty as to the extent of the applicability of section 22 (a)" under that decision. *Frederick Ayer*, 45 B. T. A. 146, 153. This is probably due largely to the fact that each case must be decided upon its facts. Precedents, therefore, while not to be ignored, furnish but a modicum of assistance.

The cases cited by the respondent tend to support his determination. Collectively they hold that the length of the term is only one of the factors to be considered in appraising the degree of retained control over corpus and income; that the "whole nexus of the relations between the settlor, the trustee and the beneficiary" must be considered; and that the desirability, from the standpoint of the settlor, of control over the transferred property, may well tip the scales against the taxpayer when the question of retained control is otherwise doubtful.

Petitioners cite an equal array of cases to support their contention that the income of the trusts is not taxable to them under the *Clifford* case.[2] It would serve no useful purpose to discuss each in detail. Some of them, as the court suggests in *Central National Bank of Cleveland* v. *Commissioner*, 141 Fed. (2d) 352, confuse rather than clarify the original exposition. Some hold, contrary to the view expressed by us in the *Verne Marshall* case, that the *Clifford* rule may not be applied to long term trusts. Others hold, contrary to the view expressed in the *Ellis H. Warren* and the *Frederick B. Rentschler* cases cited in footnote 1, that reversion of the corpus or power to use or accumulate the income for future distribution to the settlor is a prerequisite. See e. g. *Frederick Ayer, supra; E. T. Weir*, 47 B. T. A. 974, 980; *James G. Heaslet*, 47 B. T. A. 1006; and *Lura H. Morgan*, 2 T. C. 510, 514. Still others stress the presence or the absence of a power to use the

[2] *Commissioner* v. *Branch*, 114 Fed. (2d) 985; *Frederick Ayer*, 45 B. T. A. 146; *Commissioner* v. *Armour*, 125 Fed. (2d) 467; *Commissioner* v. *Betts*, 123 Fed. (2d) 534; *Commissioner* v. *Jonas*, 122 Fed. (2d) 169; *Jones* v. *Norris*, 122 Fed. (2d) 6; *Suhr* v. *Commissioner*, 126 Fed. (2d) 283; *Commissioner* v. *Chamberlain*, 121 Fed. (2d) 765; *Hogle* v. *Commissioner*, 132 Fed. (2d) 66; *Meyer Katz*, 46 B. T. A. 187; affd., 139 Fed. (2d) 107; *Stephen Hexter*, 47 B. T. A. 483; and *Robert S. Bradley*, 1 T. C. 566. Later cases having some pertinency are: *United States* v. *Pierce*, 137 Fed. (2d) 428; *Central National Bank of Cleveland* v. *Commissioner*, 141 Fed. (2d) 352; and *Lura H. Morgan*, 2 T. C. 510.

income to discharge an obligation of the settlor, such as to support his children or to furnish necessaries to his wife. It would be futile to attempt to reconcile all of the decisions.

Petitioners point out that the law of Iowa, where they reside and where the trusts were created, is applicable and under it, as construed by the local courts, the trustee can not act for his personal benefit, make use of his position for his own personal emolument, become a purchaser of the trust property, or do anything which will place him in a position inconsistent with the best interest of his *cestui que trust*.[3] This may be considered in applying the *Clifford* rule. *Helvering* v. *Stuart*, 317 U. S. 154; *United States* v. *Pierce*, 137 Fed. (2d) 428; *Estate of Benjamin Lowenstein*, 3 T. C. 1133. Broad powers of management alone are not sufficient to make the trust income taxable to him, *Commissioner* v. *Branch*, *Helvering* v. *Palmer*, and *Jones* v. *Norris*, cited in footnote 2. "* * * broad powers of management in trustees, even though without adverse interest, point to complete divestment of control, as does the impossibility of reversion to the grantors." *Helvering* v. *Stuart, supra*. Nor is the "possible benefit available through the discretionary use of income for the maintenance of his dependents * * * such as to make the trust income his own" where no reversionary interest in the corpus is present and where the income may not be otherwise used by him or accumulated for future distribution to him. *David Small*, 3 T. C. 1142. Cf. *Armstrong* v. *Commissioner*, cited in footnote 1.

Applying the principles briefly alluded to, we are of the opinion respondent erred in taxing the income of the trusts to petitioners under section 22 (a) and *Helvering* v. *Clifford, supra*. It would serve no useful purpose to repeat the facts, none of which are in issue and the most salient of which have already been set out; nor need we pause to analyze more completely the applicable decisions. Much recently said by the Supreme Court in *Helvering* v. *Stuart, supra*, and by us in *Estate of Benjamin Lowenstein* and *David Small, supra*, is apposite. See also *United States* v. *Pierce; Central National Bank of Cleveland, Executor; Lura H. Morgan; Commissioner* v. *Branch*, and the other cases cited in footnote 2. We hold that respondent erred in including the income in issue in petitioners' gross income under section 22 (a).

Under section 166, I. R. C., the income of each trust is to be included in the gross income of the respective grantor if at any time the power to revest in the grantor title to any part of the corpus of the trust is vested in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or income therefrom, or in any person not having a substantial adverse interest in the disposition of such part of the corpus

[3] *Keating* v. *Keating*, 182 Iowa 1056; 165 N. W. 74; *In re Cool's Trusteeship*, 210 Iowa 30; 230 N. W. 353; *Linsley* v. *Strang*, 149 Iowa 690; 128 N. W. 932; *Bennett* v. *Klipto Loose Leaf Co.*, 201 Iowa 236; 207 N. W. 228.

or the income therefrom. Under section 167, I. R. C., the income is to be included in the gross income of the grantor if it is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, may be, accumulated for future distribution to him. Respondent contends that each settlor-trustee retained sufficient powers, especially under paragraphs 5 and 11 (f) set out above, "to revest in himself or herself title in the said shares of stock or other property held in trust" and to "hold or accumulate for future distribution indirectly to himself or herself, respectively, the dividends on said shares of stock," to make both sections applicable and to justify including the income in the grantor's gross income. We do not so construe the enumerated powers.

The powers were given to the trustee as a fiduciary. Cf. *W. C. Cartinhour*, 3 T. C. 482, 489. He did not have the power, either as grantor or trustee, to alter, amend or terminate the trust nor could he vest title to the corpus in himself. Under the law of Iowa, as construed by its courts, the trustee, as such, is apparently as much circumscribed as under the law of Illinois. Paraphrasing the language used by the Supreme Court in *Helvering* v. *Stuart, supra*, we think it may be said that the trusts "stand as though an Iowa statute or a provision of the instruments forbade assignments of any of the corpora or of the income to the grantors except as may be specifically provided by their terms." Power to acquire, encumber and dispose of the securities as a trustee, relied upon by the respondent to support his view, gives the trustee no right or power to dispose of them to the purposeful detriment of the trust and, under the principle of *inclusio unius est exclusio alterius*, acquisition of the property would necessarily be limited to acquisition by him as a trustee, rather than as an individual. "On the assumption that the Iowa law" (again paraphrasing *Helvering* v. *Stuart*) "forbids the vesting of the trust res in the taxpayers under section 166, it would also be impossible for the trustees to accumulate the income for or to distribute it to the grantor directly so as to come within section 167." Moreover the trust indentures specifically provide that the accumulated income—after the payment of the "annuities"—shall be held for the benefit of the "annuitant" (the spouse) and those appointed by her. We think, therefore, that the respondent can not be sustained in including the income in petitioners' gross income under either section 166 or section 167.

Uncontested adjustments make it necessary that a recomputation of the deficiencies be made.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

DISNEY and KERN, *JJ.*, concur only in the result.