OPINION. Black, Judge: We shall consider the issues in the order previously stated. — This issue involves the taxability of the net income of the eight trusts created by either one or the other of the petitioners in 1935, and it is the principal issue in the case. The respondent determined that the net income of all the trusts was taxable to petitioners as their community income, and in a statement attached to each deficiency notice he explained his determination thus: It is held that the income of various trusts created by .either Edgar G. Tobin or Margaret Batts Tobin, represents taxable income to the community as follows: (Then follows a schedule showing the net income of each of the eight trusts for each of the taxable years 1940 to 1943, inclusive.) The respondent, in his brief, contends (1) that the income of all eight trusts is taxable to petitioners as community income under section 22 (a) of the Internal Revenue Code (relying principally upon Helvering v. Clifford, 309 U. S. 331), and (2) that, in addition to being taxable under section 22 (a), the income of four of the trusts (Edgar Tobin Trust, Margaret Batts Tobin Trust, Ethel Murphy Tobin Trust, and Harriet Fiquet Batts Trust) is also taxable to petitioners as community income under section 167 (a) (2) of the Internal Revenue Code. Petitioners contend that the income in question is taxable to the trusts, which returned it and paid the tax thereon as separate taxable entities, and that no part of such income is taxable to petitioners. We shall first consider whether the net income of the Ethel Murphy Tobin Trust and the Harriet Fiquet. Batts Trust is taxable to petitioners as community income under section 167 (a) (2), supra. The material provisions of this section are set forth in the margin.[1] As far as the life beneficiaries of these two trusts are concerned, the trusts are reciprocal trusts. They were each created on November 14, 1935. Tobin was the trustor of the Ethel Murphy Tobin Trust and Margaret Batts Tobin was the trustor of the Harriet Fiquet Batts Trust. The Ethel Murphy Tobin Trust provided that “The Trustee shall pay to Margaret Batts Tobin or for her benefit during the balance of her life, at such time and in such manner, as the Advisory Committee may direct, any portion of the net income derived from said trust estate,” with remainders over to others. The Harriet Fiquet Batts Trust provided that “The Trustee shall pay to Edgar G. Tobin or for his benefit during the balance of his life, at such time and in such manner, as the Advisory Committee may direct, any portion of the net income derived from said trust estate,” with remainders over to others. The original corpus of each trust was the same, namely, 160 class C shares of Tobin Aerial Surveys, Inc., of the fair value of $4,000. The advisory committee of each trust was the same. It seems clear that if Margaret Batts Tobin had been the trustor of the Ethel Murphy Tobin Trust and if Tobin had been the trustor of the Harriet Fiquet Batts Trust, the net income of these trusts would be taxable to the trustors under section 167 (a) (2), supra, for under the provisions of the trust instruments such income could be distributed to the trustor in the discretion of the trustor or of any person not having a substantial adverse interest in the disposition of the income. In substance, Margaret Batts Tobin was the trustor of the Ethel Murphy Tobin Trust and Tobin was the trustor of the Harriet Fiquet Batts Trust. Lehman v. Commissioner, 109 Fed. (2d) 99; certiorari denied, 310 U. S. 637. Although the Lehman case was an estate tax case, we think the principles upon which that case rests are applicable here. See also Purdon Smith Whiteley, 42 B. T. A. 316; Werner A. Wieboldt, 5 T. C. 946. We hold, therefore, that for the taxable years in question Margaret Batts Tobin was in substance the grantor of the Ethel Murphy Tobin Trust and that the income of that trust could “in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such * * * income” have been distributed to the grantor. We likewise hold that Tobin was in substance the grantor of the Harriet Fiquet Batts Trust and that the income of that trust could have been distributed to him in the manner specified in section 167 (a) (2) of the Internal Revenue Code. It follows that the net income of these two trusts shall be included in computing the net income of the respective grantor. Sec. 167 (a) (2), supra. It remains to be determined whether the income of these two trusts is community income. In view of our holdings above, the income of each trust must be regarded as having been received by the respective life beneficiary of each trust. Under the laws of Texas, such income when received falls into the community. Commissioner v. Porter, 148 Fed. (2d) 666; Commissioner v. Snowden, 148 Fed. (2d) 569; McFaddin v. Commissioner, 148 Fed. (2d) 570; and Estate of Ernest Hinds, 11 T. C. 314. We hold, therefore, that the net income of the Ethel Murphy Tobin Trust and the Harriet Fiquet Batts Trust is taxable to petitioners as community income. We next consider whether the net income of the Edgar Tobin Trust and the Margaret Batts Tobin Trust is taxable to petitioners as community income under section 167 (a) (2), supra. These trusts are also reciprocal trusts and were both created on June 14, 1985. One was created by the wife for the benefit of her husband and one was created by the husband for the benefit of his wife. The original corpus of each trust was made up of the same kind and quantity of property, namely, 300 shares of Edgar Tobin Aero Co. stock, 7,000 shares of Tobin Map Co. stock, and 1,000 shares of Pure Oil Co. stock. The trust indentures were identical, except for the names of the respective trustor and beneficiary and the provision in the Edgar Tobin Trust whereby Margaret Batts Tobin, the trustor, was joined in the execution of the trust by her husband fro forma. Any portion of the income of each trust was payable to the beneficiary or for his or her benefit “at such time and in such manner, as the Advisory Committee may direct” and could be supplemented in case of emergency or necessity with “payment out of the corpus of the estate as the Advisory Committee may unanimously direct.” Each trust further provided that upon the death of the beneficiary the corpus became a part of his or her estate, distributable in accordance with his or her will, and, in case of intestacy, under the Texas law of descent and distribution. It seems clear that, for the reasons given in our consideration of the Ethel Murphy Tobin Trust and the Harriet Fiquet Batts Trust, Tobin should be regarded as in substance the trustor of the Edgar Tobin Trust and Margaret Batts Tobin should in substance be regarded as the trustor of the Margaret Batts Tobin Trust, and that the same result as to the taxability of the net income of the two trusts now under consideration should be reached as was obtained under our consideration of the first two trusts. The income of these two trusts is taxable to petitioners under section 167 (a) (2) and is community income. We now consider whether the net income of the Ethel M. Tobin and Katharine Tobin Trust, the Katharine Tobin Trust No. 1, the Robert Batts Tobin Trust No. 1, and the Robert Batts Tobin Trust No. 2 is taxable to petitioners as community income under section 22 (a) of the Internal Revenue Code. The material provisions of this section are set forth in the margin.[2] These trusts were clearly not reciprocal trusts such as we have just discussed above. The respondent does not contend that the income of these trusts is taxable under either section 166 or 167 of the Internal Revenue Code. Neither does he contend that section 29.22 (a)-21 of Regulations 111, as added by T. D. 5488 (1946-1 C. B. 19) and as amended by T. D. 5567 (1947-2 C. B. 9), is applicable, as these regulations are made applicable only to taxable years beginning after December 31, 1945. See Mim. 5968 (1946-1 C. B. 25). The respondent does contend that the taxability of the net income of these trusts is controlled by Helvering v. Clifford, supra, and the cases which have followed that decision. Petitioners, on the other hand, contend that these trusts do not come within the Clifford doctrine and that they should be recognized for income tax purposes as valid trusts and should be taxed accordingly. The issue under the Clifford doctrine is whether after the trust has been established the grantor may still be treated, under section 22 (a) as the “owner of the corpus.” In the language of the Supreme Court the answer “must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation.” In holding that Clifford was taxable on the income of the trust the Supreme Court, among other things, said: * * * the short duration of the trust, the fact that the wife was the beneficiary, and the retention of control over the corpus by respondent all lead irresistibly to the conclusion that respondent continued to be the owner for purposes of §22 (a). ******* The bundle of rights which he retained was so substantial that respondent cannot be heard to complain that he is the “victim of despotic power when for the purpose of taxation he is treated as owner altogether.” * * * In the instant proceedings none of the four trusts now being considered were short term trusts. They were all for long terms and were irrevocable. Tobin was the grantor in three of the trusts and his wife, Margaret Batts Tobin, was the grantor in the Robert Batts Tobin Trust No. 2. In no case would any of the trust property ever revert to the grantor or be used for his benefit in any way. In each trust a bank was named as the trustee and a committee of three persons, which was called the advisory committee, was appointed to assist the trustee in the management of the trust property. In no case did the grantor retain for himself or herself alone any of the powers of management enjoyed by Clifford in the Clifford trust. These powers were vested in the advisory committees, of which Tobin and his wife were members, in all four trusts. Originally Aldredge, who was the brother-in-law of Margaret Batts Tobin, was the third member of the committee. He resigned on June 17,1940, and was succeeded in the first two trusts by Edith W. Harrison, who was the maternal grandmother of Katharine Tobin, and in the second two trusts by Georgia C. McNemer, who was a personal friend of Margaret Batts Tobin. Although Tobin was the grantor in the first three trusts and Margaret Batts Tobin was the grantor in the fourth trust, the respondent has in his argument in effect treated each trust as if both petitioners were the grantors of each trust. From this he argues that, since both petitioners were members of each of the respective advisory committees, they, as grantors of each trust, retained a sufficient control over the trust property and its distribution among the beneficiaries as would make them continue to be the owners for purposes of section 22 (a). We know of no basis in fact or in law for such treatment. It is a fact that each trust had but one grantor, and we so hold. There would be no basis for holding otherwise. As we analyze the facts and circumstances attendant the creation and operation of the four trusts now under consideration, it seems to us that the analysis narrows down to whether the fact that the grantor of each trust was also one of the three members of the respective advisory committees is a sufficiently strong factor to compel us to find that the grantor continued to be the owner for the purposes of section 22 (a). We do not think such a finding would be a true finding of the ultimate fact, and so we do not so find. Any power that the grantor had as a member of the advisory committee was to be exercised in a fiduciary capacity. It was not a power expressly retained in the trust instrument to the grantor as an individual. Cf. W. G. Gartinhour, 3 T. C. 482, 489; Herbert T. Cherry, 3 T. C. 1171, 1179. It would certainly be true also that the other two members of the advisory committee were acting in a fiduciary capacity. There would be no basis for holding otherwise. We, therefore, hold that the respective grantor of each of the four trusts now under consideration did not continue to be the owner of the trust property for the purposes of section 22 (a). It follows that the respondent erred in taxing the income of these trusts to petitioners as community income. We do not think it would serve any useful purpose to discuss the many cases cited by the parties in their briefs, for the Supreme Court in the Clifford case has left “to the triers of fact the initial determination of whether or not on the facts of each case the grantor remains the owner for purposes of section 22 (a), and we have found as an ultimate fact that the respective grantor of each of the four trusts now being considered did not remain the owner for such purposes. We have considered all the cases cited by both parties, together with several others involving the Clifford doctrine, and we believe that our holding herein as to the four trusts now being considered falls within the ambit of such cases as Commissioner v. Branch, 114 Fed. (2d) 985; Jones v. Norris, 122 Fed. (2d) 6; Frederick Ayer, 45 B. T. A. 146; J. M. Leonard, 4 T. C. 1271; Cushman v. Commissioner, 153 Fed. (2d) 510; and Alma M. Myer, 6 T. C. 77. See also cases cited below.[3] — Are petitioners entitled to deduct certain amounts as farm expenses ? The evidence shows that petitioners deducted as net farm expenses the amounts of $10,309.51 and $9,657.97 for the years 1940 and 1941, respectively, and that each of the four trusts to whom the farm was transferred in 1943 deducted as farm losses in that year the amount of $1,629.55. Since we have held under issue 1 that the net income of one of these trusts to which the farm was transferred, namely, the Robert Batts Tobin Trust No. 1, is not taxable to petitioners, we are not here concerned with the farm losses of $1,629.55 deducted by that trust in 1943. In the pleadings petitioners have alleged error on the part of the respondent in also failing to allow a deduction for net farm expenses for 1942 of $8,753.98, but they offered no proof of any expenses for that year. Neither did they claim any deduction for farm expenses in their returns for 1942. The amounts that were deducted for the years 1940,1941, and 1943 were disallowed by the respondent “for the reason that the farming operation was not entered into for profit, but with the idea of establishing a country home.” Section 23 (a) (1) (A) of the Internal Revenue Code provides that in computing net income there shall be allowed as deductions “All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * The applicable regulations (sec. 19.23 (a)-11, Regulations 103 and sec. 29.23 (a)-ll, Regulations 111) provide in part: Expenses of farmers. — A farmer who operates a farm for profit is entitled to deduct from gross income as necessary expenses all amounts actually expended in the carrying on of the business of farming. * * * If a farm is operated for recreation or pleasure and not on a commercial basis, and if the expenses incurred in connection with the farm are in excess of the receipts therefrom, the entire receipts from the sale of products may be ignored in rendering a return of income, and the expenses incurred, being regarded as personal expenses, will not constitute allowable deductions. * * * The same regulations (sec. 19.23 (e)-5, Regulations 103, and sec. 29.23 (e)-5, Regulations 111) also provide: Losses of farmers. — Losses incurred in the operation of farms as business enterprises are deductible from gross income. * * * If an individual owns and operates a farm, in addition to being engaged in another trade, business, or calling, and sustains a loss from such operation of the farm, then the amount of loss sustained may be deducted from gross income received from all sources, provided the farm is not operated for recreation or pleasure. * * * Tobin on his returns stated “Aerial Maps” as his principal occupation or profession. A person may have, and frequently does have, more than one business. The evidence as to the operation of this farm during the taxable years which we have before us is very meager. If it was being operated as a livestock farm, we have no information as to how many head, of livestock were there or what was being done with them. On their income tax returns for 1940 and 1941, petitioners reported as a part of their community income $305.24 and $618.83, respectively, as the proceeds from the sale of sheep wool. These amounts the Commissioner has taken out of income in his determination of the deficiencies. That is all the information we have as to the cash receipts from this farm during the taxable years. In the instant proceedings the evidence fails to convince us that Tobin or'the trusts were operating the farm for profit or that they were carrying on the business of farming within the meaning of the Treasury regulations. In Union Trust Co. v. Commissioner, 54 Fed. (2d) 199, the court, in refusing to allow a taxpayer to deduct certain farm expenses, said: It is admitted that the expenditures for which petitioner sought deduction were incurred in the maintenance and operation of the Valley Ridge property, but petitioner’s obstacle is that it failed to establish before the Board the essential facts: (1) That it carried on farming operations thereon for gain; and (2) that the expenses incurred were both ordinary and necessary in transacting a fanning business. * * * We think it is fair to assume that, if plaintiff had devoted the land to agriculture for expected profit, it could and would have shown the fact by pertinent evidence. It failed in this vital particular. Cf. Deering v. Blair, 23 Fed. (2d) 975. — Are petitioners entitled to deduct from their community income for the taxable year 1943 an amount of $1,840 claimed as storage and care of certain equipment during that year? Although in the statements attached to the deficiency notices the respondent says “It is held that the amount of $1,840.00 * * does not represent an allowable deduction,” it is apparent from the itemized list of adjustments to net income for the year 1943 also appearing in the statements attached to the deficiency notices that the respondent did not specifically disallow, as such, the $1,840 deducted by petitioners on their returns in arriving at the community income tax net income and the community victory tax net income of $147,976.55 and $159,416.42, respectively. This $1,840 was paid by petitioners to the four trusts to which the Oakwell farm was transferred in 1943. Each trust returned its share of the $1,840 (apparently $460) as taxable income. The respondent, by adjustments (b) and (c), included the net income of these four trusts to which the Oakwell farm was transferred in petitioners’ community income, as follows: [[Image here]] By thus including the $52,580.17 in petitioners’ community income, che respondent has, of course, added back to petitioners’ community income the $1,840 which petitioners deducted on their returns and which the respondent did not disturb, as such. In his brief on this point the respondent argues as follows: The Commissioner has shown that the income of the respective trusts is taxable co the community under sections 22 (a) and 167 of the Internal Revenue Code. Consequently any payment made for storing photographic equipment on the farm would have the effect of petitioners transferring money from one pocket to another. If the incomes of these trusts are held to be taxable to the petitioners, then it follows that the amount paid by Tobin for the storing of this photographic equipment does not constitute a deduction, since it was paid to himself. Under issue 1 we have held that the income of Robert Batts Tobin Trust No. 1 was not taxable to petitioners, but that the income of the other three trusts was taxable to petitioners. In the recomputation under Rule 50 the present issue will adjust itself by excluding from petitioners’ community income as determined by the respondent the net income and capital gain of the Robert Batts Tobin Trust No. 1 in the respective amounts of $4,061.20 and $1,263.34. The effect of this will be that petitioners will have the benefit as a community deduction of that part of $1,840 (apparently $460) which they paid to the Robert Batts Tobin Trust No. 1 for storage of the equipment, and this is all they are entitled to under our holding that the incomes of the other three trusts are taxable to them. We do not understand the respondent to contend that the $1,840 would not be allowable as an ordinary and necessary expense of Tobin’s business if the respondent had recognized the trusts to which the amount was paid as valid trusts for income tax purposes. In order, however, that there be no doubt as to this point, we hold that the portion of the $1,840 (apparently $460) paid to the Robert Batts Tobin Trust No. 1 for storage of the equipment in question is allowable to petitioners as an ordinary and necessary business expense under section 23 (a) (1) (A) of the Internal Revenue Code. — In view of our holding under issue 1, the fourth issue has been narrowed to whether petitioners are entitled to a credit against the deficiencies for the tax paid by the trustees of the Edgar Tobin, Margaret Batts Tobin, Ethel Murphy Tobin, and Harriet Fiquet Batts Trusts for the years 1940 to 1943, inclusive. We decide this issue against petitioners upon the authority of Leslie H. Green, 7 T. C. 263, 277; affd. (C. C. A., 6th Cir.), 168 Fed. (2d) 994. Reviewed by the Court. Decisions will be entered wnder Rule 50. SEC. 167. INCOME FOR BENEFIT OF GRANTOR. (a) Where any part of the income of a trust— • ****•• (2) may, in the discretion of the grantor or of any person not having a substantial adverse Interest in the disposition of such part of the income, be distributed to the grantor; * * * ******* then such part of the income of the trust shall be included in computing the net income of the grantor. (b) As used in this section the term “in the discretion of the grantor” means "in the ®*cretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the Income in question.” SEC. 22. GROSS INCOME. (a) General Definition. — “Gross income” includes gains, profits, and income derived from salaries, wages, or compensation for personal services' * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the .ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. « * » Commissioner v. Betts, 123 Fed. (2d) 534; Helvering v. Bok, 132 Fed. (2d) 365; Lillian M. Newman, 1 T. C. 921; Commissioner v. Katz, 139 Fed. (2d) 107; W. C. Cartinhour, supra; Estate of Benjamin Lowenstein, 3 T. C. 1133; Herbert T. Cherry, supra; Alice Ogden Smith, 4 T. C. 573; Litta Matthaei, 4 T. C. 1132; Hall v. Commissioner, 150 Fed. (2d) 304; Donald S. Black, 5 T. C. 759; Hawkins v. Commissioner, 152 Fed. (2d) 221; W. L. Taylor, 6 T. C. 201; Ernst Huber, 6 T. C. 219; Estate of Standish Backus, 6 T. C. 1036 ; David L. Loew, 7 T. C. 363 ; Commissioner v. Greenspan, 156 Fed. (2d) 917; Arthur L. Blakeslee, 7 T. C. 1171; Thomas v. Feldman, 158 Fed. (2d) 488; United States v. Morss, 159 Fed. (2d) 142; Jane Cooper Bemphill, 8 T. C. 257; William P. Anderson, 8 T. C. 921; Lewis W. Welch, 8 T. C. 1139 ; and Carman v. United States, 75 Fed. Supp. 717.